UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| United States of America,<br>    *Plaintiff*,<br><br>    *v.*<br><br>Richard Simonelli,<br>    *Defendant*. | Civil No. 3:06cv653 (JBA) |
|---|---|

**RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Doc # 20]**

**I.    Background**

This case stands at the intersection of the Currency and Foreign Transactions Reporting Act, also known as the Bank Secrecy Act, 31 U.S.C. § 5311 *et seq*. ("Bank Secrecy Act"), and 11 U.S.C. § 523(a)(7), the provision of the Bankruptcy Codes that governs exceptions to discharge of debts after a debtor-petitioner is adjudged bankrupt. The material facts of the case are straightforward and undisputed, and the issue to be resolved is a legal one, apparently one of first impression.

The Bank Secrecy Act is a statutory and regulatory scheme that seeks to detect and prosecute criminal activity, pursue tax code enforcement, and engage in other "regulatory investigations or proceedings." 31 U.S.C. § 5311. Its focus on reports and records derives from the "increasing use of banks and other institutions as financial intermediaries by persons engaged in criminal activity." *Ratzlaf v. United States*, 510 U.S. 135, 138 (1994). One part of the Act requires persons who have financial interests in, or authority over, banks, securities or other financial accounts in foreign countries to report such information

to the federal government. To this end, the Act requires covered entities to report their foreign transactions and accounts in a document called the Report of Foreign Bank and Financial Accounts ("FBAR"). 31 U.S.C. § 5314(a).

During 1999, Defendant Richard Simonelli held three accounts at two banks in the Bahamas, Barclay's Bank and Leadenhall Bank & Trust, which rendered him a covered entity under the Bank Secrecy Act. As such, under 31 U.S.C. § 5314(a) Defendant was obligated to file with the Internal Revenue Service an FBAR disclosing these accounts.[1] Defendant did not file the required FBAR for calendar year 1999, and on April 7, 2004 consented to an assessment and collection of $25,000 under § 5321(a)(5) (2000), plus interest and penalties, for his willful failure to file the FBAR. On May 5, 2004, the Internal Revenue Service ("IRS"), acting as a delegate of the Secretary of the Treasury and pursuant to 31 U.S.C. § 5321(a)(5), made this assessment and demanded payment. (Def.'s Local R. 56(a)1 Stmt. ¶¶ 1–5.) After Defendant failed to make any payment, the Plaintiff United States of America, acting for the Secretary of the Treasury and the IRS, filed this civil case against Defendant in April 2006 to collect the FBAR penalty, plus interest and penalty interest.

After the IRS assessed the FBAR penalty on Defendant but before this suit was filed, Defendant obtained a general discharge in bankruptcy on December 26, 2005 under 11 U.S.C. § 727. *In re Simonelli*, No. 05-34621 (Bankr. D. Conn. 2005). He claims that the

---

[1] Specifically, 31 U.S.C. § 5314(a) obligates entities to file an FBAR with the IRS if they "make[] a transaction or maintain[] a relation for any person with a foreign financial agency."

FBAR penalty assessed was discharged at that time. In its motion for summary judgment, the government maintains that this FBAR penalty is excepted from bankruptcy discharge by 11 U.S.C. § 523(a)(7). (Pl.'s Mot. Summ. J. at 1; Pl.'s Mem. in Supp. at 7–10.) In response, Defendant argues that his bankruptcy discharge relieves him of his obligation to pay the FBAR penalty under § 523(a)(7)(B) because the FBAR penalty is in actuality a "tax penalty."

In that the parties agree on the material facts recited above and their dispute presents a purely legal question, it is "particularly conducive to disposition by summary judgment." *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 93 (2d Cir. 2003).[2] For the reasons that follow, the Court concludes that the FBAR penalty was not discharged in bankruptcy and Plaintiff's Motion for Summary Judgment will be granted.

## II.   Statutory Framework

Under the Bankruptcy Code certain kinds of debts are not discharged when a petitioner is adjudged bankrupt. Specifically, 11 U.S.C. § 523(a)(7) establishes that a discharge under 11 U.S.C. § 727 does not relieve the debtor-petitioner of "any debt . . . to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than" two kinds of "tax penalt[ies]." Defendant maintains that the FBAR penalty is one of these kinds of tax penalties and thus was discharged.

---

[2] The well-known summary judgment standard is familiar to the Court and will be applied without recitation in detail. *See, e.g., Milardo v. City of Middletown*, 528 F. Supp. 2d 41, 44-45 (D. Conn. 2007).

As the Supreme Court has explained, "[o]n its face, [§ 523(a)(7)] creates a broad exception [to discharge in bankruptcy] for all penal sanctions, whether they be denominated fines, penalties, or forfeitures. Congress included two qualifying phrases; the fines must be both 'to and for the benefit of a governmental unit,' and 'not compensation for actual pecuniary loss.'" *Kelly v. Robinson*, 479 U.S. 36, 52 (1986). Thus, to be excluded from this broad class of penal sanctions whose discharge is prohibited, a debt must either fall outside that class or must fall within one of three exclusions. A debt for a penal sanction is dischargeable if it: (1) is not "payable to and for the benefit of a governmental unit,"[3] or (2) is "compensation for actual pecuniary loss,"[4] or (3) is one of two kinds of "tax penalt[ies]." The two kinds of "tax penalt[ies]" excluded from the § 523(a)(7) exception to discharge are certain kinds of "tax or customs dut[ies]" listed at § 523(a)(1), and penalties for taxes that are "imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition." § 523(a)(7)(A), (B). Defendant conceded at oral argument that neither (1) nor (2) would exclude his FBAR penalty, and focuses on (3).

---

[3] A debt is dischargeable even if it is a "fine, penalty or forfeiture" if it is not "payable to and for the benefit of a governmental unit." Because the FBAR penalty is payable to the IRS and because it is, by virtue of the fact that it incentivizes compliance with the Act, for the benefit of the federal government, this exclusion is not applicable here.

[4] A debt is dischargeable if it is "compensation for actual pecuniary loss." Although Defendant argues that the IRS assessed the FBAR penalty on him in lieu of collecting taxes on his offshore accounts, he does not claim that his debt is "compensation for actual pecuniary loss."

4

**III.     Discussion**

   *A.     Defendant's Arguments*

At oral argument Defendant clarified his position to be that his debt for the FBAR penalty is dischargeable under § 523(a)(7)(B), which discharges any debt for a "tax penalty" that is "imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition." He conceded that if the FBAR was not a "tax penalty" under this provision, it could not be discharged at all. The government conceded that if it is a "tax penalty," it was incurred with respect to a transaction or occurrence that occurred more than three years prior to the bankruptcy petition and would be dischargeable.

In support of his argument that the FBAR penalty is a tax penalty under § 532(a)(7)(B), Defendant claims that the IRS assessed the $25,000 to which he consented, in lieu of assessing taxes on him because his failure to file the FBAR deprived the IRS of any information about his foreign bank transactions, making it impossible for the IRS to know how much tax to assess on him. In Defendant's view, the IRS uses the FBAR documents to track money in offshore accounts (or transactions occurring outside the United States) of which the IRS otherwise has no knowledge but on which it would otherwise seek to assess taxes. Once the IRS knows, from reviewing the information contained in the FBAR, how much a person owed in taxes if the accounts had been located (or the transaction occurred) in the United States, it assesses that person a tax in this amount. When a person fails to file an FBAR, the IRS cannot track how much she would owe in taxes, and thus instead of collecting these would-be taxes, Defendant reasons, the IRS imposes a civil penalty—the FBAR penalty—as a rough approximation of those taxes it has lacked sufficient information to assess. Defendant thus argues that the FBAR penalty is imposed in lieu of taxes, and thus

is, in fact, a tax. Relatedly, Defendant also argues that the FBAR penalty is a tax penalty because the IRS uses it to penalize persons who fail to file FBARs, frustrating the IRS's ability to track, assess and collect their would-be taxes.

Defendant relies on the statute and regulations pursuant to which the IRS assessed the FBAR penalty. At oral argument he pointed to 31 U.S.C. §§ 5311 and 5321 and 31 C.F.R. § 103.24. As discussed above, § 5311 lays out the Bank Secrecy Act's multiple purposes and § 5321 authorizes the maximum and minimum assessments of the FBAR penalty, which it denominates a "penalty."[5] In 31 C.F.R. § 103.24 the Secretary of the Treasury delegates to the IRS the authority to assess and collect civil penalties under 31 U.S.C. § 5321, and to "investigate possible civil violations" of the Bank Secrecy Act. These provisions say nothing about the Bank Secrecy Act serving as a mechanism to collect otherwise uncollected taxes,

---

[5] When Defendant failed to file the FBAR, he violated 31 U.S.C. § 5314(a). Under the version of 31 U.S.C. § 5321(a)(5) in effect at the time Defendant was penalized, the statute authorized the Secretary of the Treasury to "impose a civil money penalty on any person who willfully violates or any person willfully causing any violation of any provision of section 5314." For failures to file an FBAR, the value of that "civil money penalty" was required to be no more than "the greater of (I) an amount (not to exceed $100,000) equal to the balance in the account at the time of the violation; or (II) $25,000." 31 U.S.C. §§ 5321(a)(5)(A), (B)(ii) (2000). The Secretary's regulations specify that the penalty for a failure to file an FBAR is a "civil penalty." *See* 29 C.F.R. §§ 103.56(g) (2004) (authorizing the IRS "to assess and collect civil penalties under 31 U.S.C. [§] 5321 . . . [and] investigate possible civil violations of these provisions"); 103.57(g)(2) (2004) (imposing, for violations of 31 U.S.C. § 5314 and 31 C.F.R. § 103.24, "a civil penalty" within the parameters articulated in 31 U.S.C. § 5321(a)(5) (2000)).

After the IRS assessed the FBAR penalty on Defendant in May 2004, Congress amended § 5321(a)(5), but the provision still denominates the FBAR penalty a "penalty." *See* American Jobs Creation Act of 2004, Pub. L. 108-357, § 821(a), 118 Stat. 1418, 1586 (Oct. 22, 2004). The current version of the provision authorizes penalties for willful violations of § 5314 up to the greater of (1) half the value of the account or transaction that should have been reported, or (2) $100,000. 31 U.S.C. § 5321(a)(5) (2006).

and do not contradict the Bank Secrecy Act's own articulation, at 31 U.S.C. § 5311, of its purposes.

   B.   *Whether Defendant's debt for the FBAR penalty is for a "penalty" or "tax"*

A plain text reading of the Bank Secrecy Act is that the FBAR penalty is a "penalty" for purposes of 11 U.S.C. § 523(a)(7). The statutory penalty for willful failure to comply with § 5314(a) is a "civil money penalty" whose parameters are outlined in § 5321(a)(5). The Secretary's regulations specify that the penalty for a failure to file an FBAR is "a civil penalty." *See* 29 C.F.R. §§ 103.56(g) & 103.57 (2004). The Bank Secrecy Act and its implementing regulations thus expressly denominate the penalty imposed on Defendant to be a "civil penalty."[6]

Defendant argues that, notwithstanding the FBAR penalty's statutory denomination as a "penalty," the FBAR penalty is, in essence, actually a tax. (Def.'s Mem. in Supp. Obj. Pl.'s Mot. Summ. J. at 1.) He points to *United States v. Sotelo*, 436 U.S. 268 (1978), for the proposition that a pecuniary burden imposed on a debtor can be characterized as a "tax" even if the statute under which it is imposed denominates it a "penalty." (Def.'s Mem. in Supp. Obj. Pl.'s Mot. Summ. J. at 4–5.) Beyond that general proposition, however, *Sotelo* is not applicable here. That case involved a debtor who, before filing for bankruptcy, had

---

[6] The FBAR penalty also fits the definition of a "penalty" in *Black's Law Dictionary*. A penalty is "[p]unishment imposed on a wrongdoer, usu[ally] in the form of imprisonment or fine; esp[ecially], a sum of money exacted as a punishment for either a wrong to the state or a civil wrong (as distinguished from compensation for the injured party's loss)." BLACK'S LAW DICTIONARY 1168 (8th ed. 2004). Defendant's failure to file an FBAR was a wrong to the state; while Defendant's omission violated 31 U.S.C. § 5314, it resulted in no injured private party and no pecuniary harm, either to a private party or to the state. The FBAR penalty is assessed on Defendant as punishment, not as any sort of compensation for any pecuniary harm.

collected funds from his employees in the form of withheld taxes, but had failed to pay them over to the IRS. The Internal Revenue Code imposed a "penalty" on him equal to the amount of taxes he failed to pay over. *Sotelo*, 436 U.S. at 270 & n.1. The Supreme Court held that the collected funds' "essential character" was taxes because the funds were taxes when the debtor withheld them from his employees, and as a result they were taxes dischargeable under bankruptcy law. *Id.* at 275.

In this case, by contrast, the debt to be collected from Defendant was imposed pursuant to a non-tax law (the Bank Secrecy Act), that Defendant seeks to recharacterize as a tax (rather than a non-tax) and its dischargeability involves a different Bankruptcy Code section.

Alternatively, Defendant urges the Court to use the four-part definition of a "tax" from *In re Lorber Industries of California, Inc.*, 675 F.2d 1062 (9th Cir. 1982) to determine whether his FBAR penalty is a "tax" rather than a "non-tax charge[]." *In re Lorber* concerned the priority of debts, including "taxes," to be repaid out of a debtor's estate after a petitioner is adjudged bankrupt. *See id.* at 1063. According to *In re Lorber*, a tax is characterized as:

>   (a) An involuntary pecuniary burden, regardless of name, laid upon the individuals or property;
>   (b) Imposed by, or under authority of the legislature;
>   (c) For public purposes, including the purposes of defraying expenses of government or undertakings authorized by it;
>   (d) Under the police or taxing power of the state.

*Id.* at 1066.[7]

---

[7] The Ninth Circuit's decision in *In re Lorber* was premised on a reading of the now-superseded Bankruptcy Act of 1898, as amended. Nonetheless, the Second Circuit adopted the *In re Lorber* test for purposes of the analogous provision of the current

The FBAR penalty is not an "involuntary pecuniary burden;" the Bank Secrecy Act does not impose any pecuniary burden on covered entities who fulfill their obligations under the Act, only those who violate federal law by failing to file FBARs when the Act requires them to do so. The term "involuntary" connotes an inability of an individual to avoid assessment of a pecuniary burden in carrying out otherwise lawful activities. *See Boston Reg'l Med. Ctr., Inc. v. Mass. Div. of Health Care Fin. & Policy (In re Boston Reg'l Med. Ctr., Inc.)*, 365 F.3d 51, 60 (1st Cir. 2004) (rejecting argument that a pecuniary burden was "voluntary" if a covered entity could avoid it by "ceas[ing] all . . . operations," because under that argument, "the federal income tax would not qualify as a 'tax' because the taxpayer may voluntarily minimize his or her tax liability by earning less income or by taking advantage of deductions").[8] Here, simply, Defendant could have continued to hold his foreign bank accounts and avoid assessment of the FBAR penalty if he had filed an FBAR.[9] The FBAR

---

Bankruptcy Code of 1978, as amended, governing the priority of debts to be repaid out of a bankrupt's estate. *See LTV Steel Co. v. Shalala (In re Chateaugay Corp.)*, 53 F.3d 478, 498 (2d Cir. 1995).

[8] Under MASS. GEN. LAWS ch. 118G, § 18 (1996), the law at issue in *Boston Reg'l Med. Ctr., Inc.*, all covered hospitals contributed to or received credits from a Massachusetts Uncompensated Care Pool based on how much health care they provided to indigent patients. *Boston Reg'l Med. Ctr., Inc.*, 365 F.3d at 54. Covered hospitals which failed to contribute to or credit the Uncompensated Care Pool would lose their licenses. *Id.* at 54 n.3. If a hospital wanted to engage in its otherwise lawful activity of providing health care, it was obligated to pay into or credit the Uncompensated Care Pool. The law thus imposed an involuntary pecuniary burden on all covered entities.

[9] Defendant argues that the FBAR penalty assessment is involuntary under *In re Lorber* because "a tax amount would have been imputed upon him whether he voluntary [*sic*] agreed to the negotiated amount due or not." (Def.'s Mem. in Supp. Obj. Pl.'s Mot. Summ. J. at 5.) Defendant therefore tautologically assumes the FBAR is a tax, for purposes of arguing that it is a tax.

penalty is therefore not "involuntary" and thus falls outside *In re Lorber*'s definition of "tax."[10]

Finally, Defendant argues that § 5321(a)(5) (2000) allows the government to collect "taxes in situations where assessment based on actual taxes due may be impossible to determine as a result of the barriers created by the nature of the accounts." (Def.'s Mem. in Supp. Obj. Pl.'s Mot. Summ. J. at 6.) In Defendant's view, the "tax" collected by the IRS under the Bank Secrecy Act could equal 100 percent of the value of the transaction or account, and would be collectible only where the person failed to file an informational document with the government. Although Defendant argues that the negotiated FBAR penalty to which he stipulated incorporated his potential tax liabilities, he provides no authority or evidence in support of this assertion.

For the reasons stated above, Defendant's attempt to characterize the Bank Secrecy Act as "a mechanism to collect [covered entities'] taxes due" (Def.'s Mem. in Supp. Obj. Pl.'s Mot. Summ. J. at 6) is unavailing. The IRS's assessment of the FBAR penalty is not, as Defendant argues, "government collecting, for lack of better terminology, back taxes." (*Id.*

---

[10] The FBAR penalty is also not a tax under the even broader definition of the term in *Black's Law Dictionary*, which defines "tax" as "[a] monetary charge imposed by the government on persons, entities, transactions, or property to yield public revenue." BLACK'S LAW DICTIONARY 1496 (8th ed. 2004). Neither the Bank Secrecy Act generally, nor the penalty associated with violations of 31 U.S.C. § 5314(a) specifically, is designed "to yield public revenue." The Act requires covered entities to file documents listing their foreign transactions and accounts.; it does not contemplate any mechanism for "yield[ing] public revenue" *except* in the event that a covered entity, like Defendant, fails to comply with its reporting requirements. The FBAR penalty better fits the *Black's Law Dictionary* definition of "penalty." *See supra* note 6.

at 4.) Given the text, framework, and history of the Bank Secrecy Act, as well as the plain meanings of the terms "tax" and "penalty" and the operation of § 5321(a)(5), the "better terminology" to describe the FBAR penalty is as a "civil money penalty."

    C.    *The "tax penalty" exclusion from § 523(a)(7)'s exceptions to discharge.*

A debt may be discharged if the debt is for one of two kinds of "tax penalt[ies]." Defendant argues that his debt is dischargeable under this exclusion. In order to be a tax penalty, the FBAR penalty would have to be linked in some way to an underlying tax. For Defendant's argument to have any viability, the FBAR itself would have to be a tax. The FBAR is a document, not a tax: indeed, the document specifically instructs filers: "Do NOT file with your Federal Tax Return." (Department of the Treasury Form TD F 90-22.1 (Report of Foreign Bank and Financial Accounts).) The Act requires covered entities to file the FBAR with the government, but not to remit money or property. Neither the FBAR nor the Bank Secrecy Act impose any pecuniary burden on covered entities who fulfill their obligations under the Act. Because there is no tax underlying the FBAR penalty, the FBAR penalty cannot be considered a "tax penalty." Because the Court concludes that the FBAR

penalty is not a "tax penalty,"[11] the fact that more than three years have elapsed since the "transaction or occurrence" before the bankruptcy petition filing, is of no import.

## III.     Conclusion

Defendant's debt for the FBAR penalty is for a "penalty" within the meaning of 11 U.S.C. § 523(a)(7), and therefore falls within that section's broad class of debts excepted from discharge. Defendant's debt does not fall within any of the three exclusions to the § 523(a)(7) class of excepted debts. Therefore, § 523(a)(7) bars discharge of Defendant's debt stemming from the May 2004 assessment of the FBAR penalty.

---

[11] The Court's conclusion that the penalty at issue in this case is a civil penalty, and not a tax, is bolstered by the fact that the statutory and regulatory framework governing FBARs bears none of the hallmarks of a "tax." Indeed, different legal presumptions apply to IRS assessments in tax assessment cases than in FBAR violation cases. *Compare United States v. Fior D'Italia*, 536 U.S. 238, 242 (2002) ("It is well established in the tax law that an assessment is entitled to a legal presumption of correctness"), *with United States v. Dollar Bank Money Market Account*, 980 F.2d 233, 238 n.2 (3d Cir. 1992)) ("the government has the burden [of proof regarding *mens rea*]" in both civil and criminal FBAR violation cases).

Accordingly, Plaintiff's motion for summary judgment [Doc. # 20] is GRANTED. The Clerk is directed to close this case and enter Judgment in favor of Plaintiff in the amount of $25,000.00, plus interest pursuant to 31 U.S.C. §§ 3717(a)(1), (e)(2) and (f). To the extent that Defendant wishes to pursue the issue raised at oral argument of whether the accrual of interest was stayed during the pendency of the automatic bankruptcy stay, he may do so in a Motion for Modification of Judgment setting forth the legal basis for such a stay. Such motion shall be filed within 30 days.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 30th day of September, 2008.